## WOOTEN v. CROSBY COUNTY et al.

### No. 5958.

Court of Civil Appeals of Texas. Amarillo.
March 14, 1949.

Rehearing Denied April 11, 1949.

554

C. L. Harris, A. W. Salyars and Brummett & Brummett, all of Lubbock, for appellant.

Frank R. Day, of Plainview, and W. P. Walker and L. A. Wicks, Jr., both of Crosbyton, for appellees.

STOKES, Justice.

Appellant, Andy Wooten, instituted this suit as a resident and tax-paying voter of Consolidated Road District No. 1 of Crosby County for an injunction against the appellees, Crosby County, its Commissioners' Court, tax collector and assessor, enjoining the commissioners' court from issuing and selling bonds of Consolidated Road District No. 1 in the sum of $132,-000, authorized by an election in the district held on June 5, 1948. As grounds for the injunction, he alleged that the proceedings before the commissioners' court required by Article 752e, Vernon's Revised Civil Statutes of 1925, which provides for a hearing and determination by the commissioners' court upon the petition for the election, were irregular and that the provision of the order calling the election, to the effect that the proposed improvement or paved road to be constructed by the use of the proceeds of the bonds would be for the benefit of all taxable property situated within the boundaries of the road district, was untrue. He alleged that the

commissioners' court made such finding arbitrarily and wrongfully and without evidence to support it; that the question of whether the proposed road would be beneficial to the taxable property situated within the road district had not been judicially determined by the commissioners' court but that the finding was wrongful, arbitrary, contrary to the facts; and that the issuance and sale of the bonds and levy of taxes against his property would be arbitrary and contrary to the laws of the state.

The appellees answered by the general issue and specially alleged that due notice of the hearing on a valid petition was given and published as provided by law, and that the hearing was held in full compliance with the statute.

The case was submitted to a jury upon a single special issue in answer to which the jury found that on or prior to the entry of the order of May 1, 1948, the commissioners' court did not fail to hear evidence that the construction of the road would be of benefit to all the taxable property within the road district. The court thereupon entered judgment denying appellant any relief and, his motion for a new trial being overruled, he duly excepted and presents the case in this court upon four assignments of error. He contends the judgment should be reversed because, first, the court erred in overruling his motion for an instructed verdict because there was no evidence presented at the hearing upon the petition for the election upon which to base a finding by the commissioners' court that all taxable property within the road district would be benefited by the proposed road, and, secondly, that the court erred in submitting to the jury the special issue in the form in which it was written and refusing to submit an issue in a different form requested by him.

The testimony showed that a petition, in proper form, had been presented to the commissioners' court, requesting that an election be called in the road district to decide whether or not bonds should be issued and sold for the purpose of providing funds to construct a paved road 17 miles in length. The petition was signed by 192 residents of the district. Proper notice of a hearing was issued and published advising the public that a hearing would be held by the commissioners' court in the courthouse at Crosbyton at 1:30 o'clock p. m. on the first day of May, 1948. It informed all persons concerned of the time and place of the hearing and of their right to appear and contend for or protest the ordering of the bond election. At 1:30 o'clock p. m. May 1, 1948, in the office of the county judge, in the courthouse at Crosbyton, the members of the commissioners' court, including the county judge, assembled, the hearing was immediately instituted, with the county judge as the presiding officer, and there were present some 12 or 15 persons other than the county judge and county commissioners. The hearing proceeded until late in the afternoon and one of appellant's attorneys, who also represented 34 other persons, was present and made an extended statement to the commissioners' court on behalf of all of his clients. The testimony does not reveal any protest registered or contention made by any person that the building of the road would not be beneficial to his property or to all of the property in the district. The statement made to the commissioners' court by appellant's attorney was, in effect, that it would be preferable to postpone the building of the road because the State Highway Department would not assist or participate in constructing more than 14 miles of it and that there was a bill pending in the Congress under which, if enacted into law, the United States Government would build 28 miles of road in Crosby County without cost to the local residents. On the other hand some two or three residents of the district appeared in favor of the proposal and informed the commissioners' court that the proposed road would be of benefit to all of the property in the district. One of them reminded the commissioners' court that the people of his section of the district had waited many years for a good road to be established and that, during much of that time, they had been forced to travel upon muddy roads. He also said that a good road would be of benefit to the school buses and enable the children of the district to attend school more regularly.

556

From the foregoing statement it will be seen that appellant's contention that no evidence was heard by the commissioners' court is not in accordance with the record. Even if the authority of the commissioners' court to order the bond election was dependent upon positive testimony at the hearing to the effect that building the road would be of benefit to all of the property in the road district, as seems to be the contention of appellant, the record shows there was ample testimony upon which the commissioners' court was authorized to enter the order and call the bond election. We are not in accord with appellant, however, in his contention that the commissioners' court was not authorized to call the election in the absence of positive testimony to that effect. Article 752e, Vernon's Revised Civil Statutes, provides that at the time and place set for the hearing of the petition, the commissioners' court shall proceed to hear such petition and all matters in respect to the proposed bond election. It further provides that, "Any person interested may appear before the court in person or by attorney and contend for or protest the calling of such proposed bond election." The statute does not contain any requirement that witnesses be produced and that testimony be heard favorable to the improvement as a basis for authority of the commissioners' court to call the election. It contemplates that the commissioners' court shall hold the hearing in order that all persons interested may appear and freely and openly present to the commissioners' court their views concerning the proposal. It is designed to prevent those entrusted with authority from holding star-chamber sessions, behind closed doors, and saddling debts and tax liens upon the people and their property without an opportunity to be heard and express themselves upon the question of benefits, or burdens without compensating advantages. Pash v. City of St. Joseph, 257 Mo. 332, 165 S.W. 710; Miller v. City of Portland, 62 Or. 26, 123 P. 64; Spalti v. Town of Oakland, 179 Iowa 59, 161 N.W. 17. It was enacted by our legislature in order to comply with the holding of the Supreme Court of the United States in the case of Browning v. Hooper, 269 U.S. 396, 46 S.Ct.

141, 70 L.Ed. 330, commonly known as the Archer County case. King v. Falls County, Tex.Civ.App., 42 S.W.2d 481.

Prior to the enactment of the statute in 1926 there was nothing in our law to guide or limit the action of the signers of a petition for an election to determine such questions as this in a road district. The petitioners for such an improvement and for bonds to be issued and taxes levied for their payment designated the location of the road, the amount of the bonds and other matters pertaining to them. The commissioners' court had no power to change, modify or deny the prayer of the signers of the petition. It was required to grant the request and, when the election resulted in favor of the proposal, the commissioners' court was obligated to levy taxes upon the property of the district sufficient to pay the debt. In the Archer County case the Supreme Court held that where a local improvement territory is selected, and created by the legislature or by a municipality enjoying full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard upon the question of benefits. But, it held further, that it is essential to due process of law that such owners be given notice and opportunity to be heard upon the question of benefits where the district is not created by the legislature, or by a municipality having legislative powers under its authority, and there has been no legislative determination that their property will be benefited by the local improvement. Thus it will be seen that the hearing required by Article 752e is not a proceeding such as the trial of a lawsuit in a constituted trial court in which allegations must be supported by competent evidence in order to warrant a judgment; but is, rather, a democratic process in keeping with the principles of government in this country in which the people to be affected are given a right and opportunity to appear and be heard by the authorities upon the question of whether or not they or their property will be benefited by the proposed improvement or encumbered with an indebtedness and lien for an improvement that will not be of benefit to them or their property.

■ The record in this case shows that proper orders were entered upon the petition for the election, proper notice was issued and published and that the hearing was held at the time and place specified in the order and notice. When the time arrived, the hearing was held and it was open to every person who desired to appear and express himself concerning the proposal. The commissioners' court remained in session until late in the afternoon and there is no intimation that any person was denied the right freely to appear and express himself concerning the entire matter. The order calling the election was entered after the hearing and the record shows no act or thing done or said by any of the county commissioners which would indicate the calling of the election was arbitrary, capricious, or from any other improper design or motive. It is only when such an order or action originates in, or is based upon, fraud or improper motive that a court is authorized to interfere with the action of the commissioners' court in calling an election to determine questions such as that here involved and appellant's first contention must, therefore, be overruled. Allen v. Emery Independent School Dist., Tex. Civ.App., 283. S.W. 674; McWilliams v. Commissioners' Court of Pecos County, Tex.Civ.App., 153 S.W. 368; Wright v. Allen, Tex.Civ.App., 257 S.W. 980; Davisson v. Eastland County, Tex.Civ.App., 6 S.W.2d 782; Schiller v. Duncan, Tex.Civ. App., 21 S.W.2d 571; King v. Falls County, Tex.Civ.App., 42 S.W.2d 481.

■ The special issue submitted to the jury required a finding as to whether or not "on or prior" to the entry of the order dated May 1, 1948, the commissioners' court heard evidence that the construction of the road would be of benefit to the taxable property in the district. Appellant presented and requested the court to submit a special issue in lieu of the one submitted by the court which would have required the jury to find whether or not the commissioners' court heard such evidence on the first day of May, 1948. The difference between the two special issues was that, in the one submitted by the court, the question of whether or not the commissioners' court heard evidence prior to the date of the hearing was included. There was no testimony to the effect that evidence was heard by the commissioners' court prior to the date of the hearing on May 1, 1948, and no contention by any party to the suit that it had been so heard. The entire controversy pertained to whether or not evidence was heard on May 1, 1948. The special issue requested by appellant was therefore more accurate and should have been substituted by the court for the one submitted to the jury. The special issue submitted was duplicitous and subject to objection. It involved the question of whether or not the commissioners had heard evidence both at the hearing and prior thereto. Two separate questions were included in it. The statute contemplates that each issue in the case be submitted separately. But, where two matters affect, or are combined in, one question, and one of them is not in reality an issue of fact on account of the testimony in reference to it being undisputed or where the facts pertaining to it are agreed upon by the parties, its submission, though duplicitous and objectionable, is harmless and, therefore, does not constitute reversible error. Kansas City, M. & O. R. Co. v. Blackstone & Slaughter, Tex.Civ.App., 217 S.W. 208; Wood v. Williams, Tex.Civ.App., 46 S.W.2d 332; Goodrich v. First Nat. Bank in Hemphill, Tex. Civ.App., 70 S.W.2d 609.

We have carefully examined all of the contentions presented by the appellant and, in our opinion, none of them presents reversible error. The judgment of the court below will therefore be affirmed.